184 N.J. Super. 463 (1981)
446 A.2d 558
IN THE MATTER OF THE APPLICATION OF CORNELIUS P. SULLIVAN, BURLINGTON COUNTY PROSECUTOR FOR FUNDS PURSUANT TO N.J.S.A. 2A:158-7.
Superior Court of New Jersey, Law Division Burlington County.
Decided November 9, 1981.
*465 Arnold M. Mellk for Cornelius P. Sullivan, Prosecutor (Greenberg & Mellk, attorneys).
Martin E. Perrotta for County of Burlington (John E. Dimon, attorney).
John A. Sweeney for Council No. 16, N.J. Civil Service Association.
HAINES, A.J.S.C.
On October 2 and 3, 1980 Cornelius P. Sullivan, Prosecutor for Burlington County, executed agreements with Council No. 16, New Jersey Civil Service Association, covering terms and conditions of employment for employees of the prosecutor's Office for the years 1980, 1981 and 1982. The agreements were retroactive to January 1, 1980 and were reached after negotiation pursuant to the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq.
The Burlington County Board of Chosen Freeholders (board) refused to provide the funds required to carry out the provisions of the prosecutor's agreements. The salary arrangements which *466 they provided were said to be more generous than those negotiated by the county with other employees and were therefore unnecessary and unacceptable. For the same reasons, the county also objected to various conditions of employment fixed by the prosecutor's agreements. Negotiations designed to bridge these differences were unsuccessful and, on November 13, 1980, the prosecutor filed a suit in lieu of prerogative writs in the Superior Court, Law Division, seeking a judgment ordering the freeholders to fund his contracts. The trial judge denied the requested relief, holding that the agreements were not binding without available appropriations because no relief had been sought under N.J.S.A. 2A:158-7, which permits the assignment judge to order the board to pay for additional expenditures. This decision was appealed to the Appellate Division, which affirmed. Sullivan v. Burlington Cty. Freeholder Bd., 179 N.J. Super. 228 (App.Div. 1981). It recognized the right of Sullivan, as the public employer of the Council's members, to negotiate collective bargaining contracts but refused to consider the substantive issue involving the enforceability of these contracts because of the procedural difficulty. It held that "our decision is without prejudice to plaintiff Sullivan applying for relief under N.J.S.A. 2A:158-7." Sullivan v. Burlington County Freeholders, 179 N.J. Super. 228, 233 (App.Div. 1981). An application to the Supreme Court for certification was denied.
The present application under N.J.S.A. 2A:158-7 was filed on June 25, 1981, on notice to the freeholder board. Hearings followed. These were legislative, not judicial. The assignment judge sat, sans robe, off the bench, informally receiving testimony and exhibits. A court reporter took testimony. The prosecutor and other witnesses presented evidence in support of the need for funds. The board, being of the opinion that "need" was to be defined by the prosecutor alone, presented no evidence on that issue. Its witnesses stressed the county's financial difficulties, the legislative restrictions upon raising monies (the budget "cap") and said that it could not afford to pay the additional monies required to fund the prosecutor's contracts.
*467 The assignment judge decided that the board's approach to the "need" question was wrong, as a matter of law. Accordingly, he wrote to the parties, advising them that he would reopen the hearings, if requested, to provide the board with an opportunity to present testimony concerning this issue. That request was made, the hearings were reopened and additional evidence received. The board presented general testimony about county finances but relied chiefly upon testimony of the prosecutor, who was called as its witness. Charles Juliana, Clerk of the Freeholder Board and its principal labor negotiator, as well as Robert Shinn, a freeholder, also testified.

I. The Binding Effect of the Contracts
The prosecutor continues to press his argument that the contracts with Council No. 16 are binding and enforceable. The question has not been decided in the courts. The conclusion here, however, is that the contracts are not enforceable against the county.
N.J.S.A. 2A:158-7 reads:
All necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws shall, upon being certified to by the prosecutor and approved under his hand, by a judge of the superior court or of the county court for such county, be paid by the county treasurer whenever the same shall be approved by the board of chosen freeholders of such county. The amount or amounts to be expended shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, unless such expenditure is specifically authorized by the order of the assignment judge of the superior court for such county.
This budget statute does not permit the prosecutor to incur expenses unless they are approved by the Freeholder Board or authorized by the assignment judge. Consequently, any agreement requiring County funding is subject to these statutory provisions, unless, as argued here, N.J.S.A. 34:13A-5.3 controls. The latter statute, part of the New Jersey Employer-Employee Relations Act, requires public employers to negotiate with employee representatives concerning terms and conditions of employment and to establish these by agreement. Does it supercede N.J.S.A. 2A:158-7? The answer depends upon legislative intent.
*468 N.J.S.A. 13A:5.3 became effective on July 1, 1968; it was amended once in 1974. N.J.S.A. 2A:158-7 has been in force, with some irrelevant changes, since 1898. It was last addressed by N.J.S.A. 2C:98-3, adopted in 1978 and effective September 1, 1979, which provided that N.J.S.A. 2A:158-7 "shall remain in full force and effect for use, administration and enforcement as heretofore ...," pending the enactment of legislation now set forth in N.J.S.A. Title 2C. Therefore, the Legislature's latest enactment emphasized the continuing force of the budget statute, notwithstanding the Employer-Employee Relations Act. It is also significant that the 1974 amendment to N.J.S.A. 34:13A-5.3 expressly provided that grievance procedures in contracts negotiated thereunder should be used for the resolution of disputes notwithstanding any contrary procedures set forth in any other statute. With respect to grievance procedure, therefore, the Legislature was careful to make the Employer-Employee Relations Act controlling over other statutes; it did not do this with respect to the budget procedures of N.J.S.A. 2A:158-7.
Logic compels a like conclusion. Were the prosecutor free to negotiate any employment contract agreeable to him, without participation of the agency obliged to fund the contract, it is obvious that he could play havoc with county budgets and taxpayers' monies. He is a public employer; his employees are public employees. They must be sensitive to public concern regarding the county's tax structure and cannot ignore the interest of the Board of Freeholders in their contracts. N.J.S.A. 2A:158-7 insures the protection of these interests; it controls every contract negotiated by the prosecutor with his employees. The assignment judge, when sitting as a legislative agent, pursuant to that statute, may ignore any contracts he has made or may decide to enforce them.
Notwithstanding these conclusions, it must be recognized that this proceeding is entirely legislative. Legal conclusions are not appropriate. They are for the courts. The analysis of legislative intent is therefore not to be considered as a judicial *469 opinion. On the contrary, it is a legislative analysis provided in support of the conclusion that the prosecutor's contracts are not binding upon the county. The obligation of the assignment judge is to carry out the statutory directive contained in N.J.S.A. 2A:158-7, disregarding the contracts at his discretion.

II. Terms and Conditions of Employment
The Freeholder Board objects to numerous conditions of employment contained in the prosecutor's contract, in addition to the salary arrangements. These objections relate to hours of work, overtime, military leave with pay, clothing allowances, holidays, sick leave on retirement, police proficiency awards and coffee breaks. The prosecutor argues that these matters are entirely within his discretion as the public employer. The question raised is novel in the present setting and is largely a question of law, which an assignment judge should not consider when sitting as a legislative agent. In that capacity, he is limited by N.J.S.A. 2A:158-7 to the authorization of "expenditures." These must not be authorized, however, unless they necessary, a question clearly affected by terms and conditions of employment. For example, if the prosecutor requires an employee to work only one hour a week while agreeing to an annual salary of $25,000 for her, the salary might well be challenged as unnecessary. It follows, therefore, that this proceeding is limited to a consideration of whether the expenditures demanded by the prosecutor are necessary and, in that context, how the terms and conditions of employment affect the question of need. The propriety of the terms and conditions of employment and the scope of the prosecutor's discretion with respect to them are not to be addressed.

III. The Evidence
The freeholders take the position that they cannot afford to pay the monies requested by the prosecutor. They say that they should not be expected to raise any additional monies by taxation; that further expenditures out of surplus would be improvident *470 and that the prosecutor's demands can be met only by depriving other equally deserving county departments of funds. They stress the fact that they have maintained a level tax rate in the county for many years, an achievement they hope to continue. This position raises difficult questions which are compounded by statutory limitations upon increases in the county budget. How much money can a county afford to raise by taxation? How should it allocate its resources? What county departments, if any, are entitled to priority in financial matters? Is the maintenance of a level tax rate more important than the maintenance of adequate, competitive salary levels? The questions are largely philosophical. They can be applied in a concrete situation, such as the present controversy, only by the presentation of hard facts and well buttressed arguments dealing with specifics. Such facts were not presented here. The board's evidence addressing the question of ability to pay consisted of generalities. It is not sufficient to sustain the contention.
The freeholders not only claim that they cannot afford to meet the prosecutor's demands, but also argue that he does not need the money. The prosecutor disagrees. He points to the burgeoning volume of work in his office and, in terms of funding provided, the poor standing of Burlington County in comparison to other counties.
Burlington is the 10th largest in population of the 21 counties in New Jersey. In the 1979-1980 year it was also 10th in the number of indictable complaints filed and 13th on the crime index (which reflects increases in crimes of violence and in crimes affecting property). From 1970 to 1978, while the county's population rose by only 11%, crime increased 183%; crimes of violence numbered 286 in 1970, 885 in 1980. The upward trend continues. In terms of financial support to the prosecutor's office, however, in 1980 Burlington ranked 18th out of 21 counties. The only counties ranking below Burlington were those with much smaller case loads and part-time prosecutors. Salaries of detectives and investigators are not competitive; in *471 several instances less qualified municipal personnel having like assignments are paid more. Between 1977 and 1981 the prosecutor's office lost 81 employees. Twenty to twenty-five percent of these employees left because of low wages. Many of them were highly qualified and could be replaced only after a long period of training. Significantly, competent and experienced assistant prosecutors, charged with carrying the trial load of the prosecutor's office, have resigned because of salary differences. In the opinion of the prosecutor, these resignations directly affected the conviction rate of his office. During the years 1978, 1979 and 1980, 80% of the criminal jury trials in the county resulted in convictions, a very high percentage. In 1981 a serious drop to 66% has occurred. Difficulties are being experienced in recruiting investigators; three recent job applicants refused employment because of low salaries. Problems occur when county detectives and investigators work with their municipal counterparts on criminal cases, a common occurrence. The county personnel, while being in charge of these investigations often find they are receiving less pay than their subordinate associates.
James Mulvahill, an Assistant Attorney General and Chief of the Prosecutors Supervising Section in the office of the Attorney General, testified that his office strongly supported the prosecutor's application. He has maintained a state salary survey of all county prosecutors' offices since 1978. This shows that Burlington County, for several years, has been low in comparison with other counties. Over these years the state average for detectives' and investigators' salaries has been $20,442 while Burlington County's has been $17,553. The State average for clerical personnel has been $10,428, the county average $9,313.
The prosecutor expressed the opinion, almost entirely uncontradicted except in the case of clerical personnel, that the requested funds were necessary in order to carry out the work of his office. No testimony of any consequence was presented *472 by any witness concerning the effect of terms and conditions of employment, apart from salaries, upon the question of need. Consequently, these terms and conditions have not been considered as having any significant impact upon the question of the prosecutor's need for the monies he has requested.

A. Non-clerical Employees

The prosecutor's evidence with respect to non-clerical employees is strongly persuasive and almost entirely unchallenged. There are no comparable Burlington County positions filled by the freeholders which reflect any ability to hire and retain like employees at lower salaries. The increased emphasis on law enforcement in this State and in the county cannot be denied. The incidence of crime has increased. Sentences have become more severe, in part because of new laws, resulting in more aggressive defense tactics and more trials. Speedy trial procedures have increased pressures upon the prosecutor's office, requiring intensified effort and sophisticated administrative techniques. The loss of important personnel in the prosecutor's office by reason of inadequate salaries cannot be tolerated; in a real sense, they are not replaceable. The county's competitive position, in comparison with other counties and municipalities, is not acceptable. It is at the bottom of the list of all New Jersey counties in terms of financial support of the prosecutor's office. Per capita expenditures in 1980 amounted to only $3.42. This compares, for example, with Ocean County at $4.72, Salem County at $5.44, Cape May County at $7.66 and Atlantic County at $8.23.
The obligation of the prosecutor is to stress constant improvement in the quality and capacity of his personnel. When those personnel are performing jobs which require sensitivity, exposure to danger and extensive training, improvement can be expected only when compensation is adequate. The level of compensation must be raised to meet competition. This can be done gradually, but only if employees know that it is planned; otherwise, morale suffers, employees are lost and poor performance *473 follows. The prosecutor's budget for his nonclerical personnel is a beginning step in the right direction. His need for the requested funds is obvious.

B. Clerical Personnel

The county argues that clerical personnel in its other 50 county departments have agreed to salaries at a somewhat lower level than that proposed by the prosecutor. It believes that its ability to employ and retain these personnel shows that the prosecutor can do the same, that he does not need additional funds with respect to their salaries. The county also expresses a concern that approval of the prosecutor's clerical salary levels will result in controversy with other county clerical employees who will insist upon obtaining equal pay. That concern is realistic.
The prosecutor attempts to meet these arguments by showing that his clerical employees work under unique conditions of employment which are not present in other county departments. They are obliged to pass security checks, handle confidential information, endure psychological stress, work in emergency situations, prepare accurate statements for use in litigation and sometimes work in the company of dangerous people. They are prohibited from participating in political activity and conflict-of-interest rules often deny the opportunity for outside employment. These arguments were countered by Charles Juliana, the Clerk of the Board of Freeholders. He pointed out that security checks are required for probation department employees, dispatchers at the communications center and central computer operators who deal, among other things, with the prosecutor's office. Every clerical employee in the county has certain obligations of confidentiality and is subject to stress. Accuracy is as important for other employees as for those in the prosecutor's office. In some cases employees are not permitted to engage in political activity; they are subject to the same rules concerning outside employment as those who work in the prosecutor's office.
*474 The burden of showing need for the proposed salary increase for clerical personnel is upon the prosecutor. The evidence presented by the county on this issue is at least as convincing as that presented by him. He has not carried the burden of proof; need for these monies has not been shown. Consequently, the salaries established for clerical employees in the agreement of October 2, 1980 must be revised to equal those paid by the County of Burlington to clerical employees in its other departments.
These conclusions do not (1) affect the agreement of October 3, 1980 covering certain individual employees; their salary arrangements are approved; or (2) require any action with respect to terms and conditions of employment (other than salaries for clerical employees) an issue which is not addressed.
Counsel for the prosecutor shall prepare an order directing the County to appropriate all of the monies required to fund the contracts entered into by the prosecutor except those relating to clerical employees.